**Robert MOSES et al., Plaintiffs,**

v.

**Robert F. KENNEDY, Attorney General of the United States and J. Edgar Hoover, Director of the Federal Bureau of Investigation of the United States, Defendants.**

Civ. A. No. 6-63.

United States District Court
District of Columbia.

July 2, 1963.

William L. Higgs, Washington, D. C., William M. Kunstler, New York City, for plaintiffs.

John W. Douglas, Asst. Atty. Gen., Donald B. MacGuineas, Harland F. Leathers, Charles Donnenfeld, Attys., Dept. of Justice, Washington, D. C., for defendants.

YOUNGDAHL, District Judge.

This is an action brought by seven Negro residents of Mississippi and one white resident thereof against the Attorney General of the United States and the Director of the Federal Bureau of Investigation, to compel by mandamus certain actions on the part of these defendants, and to declare under the Declaratory Judgment Act certain rights and legal relations between the parties to this action. Defendants have moved to dismiss the complaint on the ground that mandatory relief is not appropriate. The Court will grant defendants' motion on the ground that the complaint fails to state a claim upon which relief can be granted.

Plaintiffs' complaint lists a number of incidents in which these plaintiffs allegedly have been intimidated, arrested, beaten, and prosecuted by public officials of the State of Mississippi while

plaintiffs were engaged in constitutionally protected activities such as drives to register voters for Federal elections. The Court will assume, as plaintiffs have alleged, that these activities on the part of Mississippi public officials and others could be shown to violate the Constitution. The complaint further alleges that a number of Federal statutes—42 U.S.C. §§ 1986, 1987, 1988; 18 U.S.C. §§ 241, 242, 3052, 3053; 28 U.S.C. § 549 —authorize and require United States Marshals, agents of the F. B. I., and United States Attorneys to arrest, imprison, and institute prosecutions against all persons who willfully subject any inhabitant of any state to the deprivation of any rights, privileges or immunities secured or protected by the Constitution or laws of the United States. Defendants have made no contention that this allegation is defective, and the Court will therefore assume, for the purposes of this motion, that plaintiffs could establish this proposition. Plaintiffs have further alleged, and these allegations must also be assumed to be true, that defendants

"have been repeatedly requested by plaintiffs and others to perform the statutory duties * * *, but they have refused and failed to do so. * * *

"Defendants and their agents are in possession of the results of extensive investigations by the Federal Bureau of Investigation and other Federal agencies describing in great detail the incidents set out in [the complaint.] Defendants are therefore able to perform their above statutory duties." (Complaint, para. 24.)

Plaintiffs summarize their complaint as follows:

"This is an action in the nature of mandamus to compel the defendants * * * to perform duties owed to plaintiffs and to the class which they represent, i. e., to protect plaintiffs and their constitutional rights, by the investigation, arrest, and prosecution of offending law enforcement officers of the state of Mississippi and of its political subdivisions, and offending residents of the state of Mississippi acting individually or collectively and/or in concert and conspiracy with said law enforcement officers.. By failing and refusing to perform such duties, defendants have in effect sanctioned and perpetuated a consistent pattern on the part of the law enforcement officials of the state of Mississippi and/or private and public citizens thereof inimical to plaintiffs' civil rights and liberties. Declaratory relief is also sought pursuant to 28 U.S.C. 2201." (para. 2, as amended.)

This complaint must be dismissed because it seeks remedies which, in the context of the above pleadings, this Court has no power to grant.

First, plaintiffs seek a court order directing the defendants to direct their agents to arrest, cause to be imprisoned, and institute criminal prosecutions against "those state and local law enforcement officials and any other persons, public or private, responsible for the deprivations of plaintiffs' rights * * *," both in the past and in the future. Such actions on the part of defendants, however, are clearly discretionary, and decisions respecting such actions are committed to the Executive branch of the Government, not to the courts. See The Confiscation Cases, 74 U.S. [7 Wall.] 454, 19 L.Ed. 196 (1868); Goldberg v. Hoffman, 225 F.2d 463 (7th Cir., 1955); United States v. Woody, 2 F.2d 262 (D.Mont.1924); United States v. Brokaw, 60 F.Supp. 100 (D.Ill. 1945); Milliken v. Stone, 16 F.2d 981 (2d Cir., 1927), cert. denied 274 U.S. 748, 74 S.Ct. 764, 71 L.Ed. 1331 (1927). The following language states well the reasons for limitations upon judicial power in this area:

"Article II. Section 3 of the Constitution, provides that '[the President] shall take Care that the Laws [shall] be faithfully executed.' The prerogative of enforcing the

criminal law was vested by the Constitution, therefore, not in the Courts, nor in private citizens, but squarely in the executive arm of the government. Congress has implemented the power of the President by conferring the power and the duty to institute prosecution for federal offenses upon the United States Attorney for each district. 28 U.S.C.A. § 507. In exercising his power, the United States Attorney acts in an administrative capacity as the representative of the public. * * *

"It by no means follows, however, that the duty to prosecute follows automatically from the presentation of a complaint. The United States Attorney is not a rubber stamp. His problems are not solved by the strict application of an inflexible formula. Rather, their solution calls for the exercise of judgment. * * *

"There are a number of elements in the equation, and all of them must be carefully considered. Paramount among them is a determination that a prosecution will promote the ends of justice, instill a respect for the law, and advance the cause of ordered liberty. * * *

"Other considerations are the likelihood of conviction, turning on choice of a strong case to test uncertain law, the degree of criminality, the weight of the evidence, the credibility of witnesses, precedent, policy, the climate of public opinion, timing, and the relative gravity of the offense. In weighing these factors, the prosecutor must apply responsible standards, based, not on loose assumptions, but, on solid evidence balanced in a scale demanding proof beyond a reasonable doubt to overcome the presumption of innocense." Pugach v. Klein, 193 F. Supp. 630, 634–5 (D.D.C., 1961).

Such considerations apply to investigations, arrests, and imprisonments, just as much as they do to actual prosecutions.

 Plaintiffs point to language in 42 U.S.C. § 1987 which states that Federal officials are "authorized and required" to prosecute persons who have violated certain provisions of the Civil Rights Act, and argues that this language makes the above considerations of judgment and discretion inapplicable here. Nothing in the legislative history, however, suggests that this statute should be construed more broadly than any other as far as limitations upon the power of the Judiciary to force the Executive to act are concerned. Indeed, such considerations of judgment and discretion apply with special strength to the area of civil rights, where the Executive Department must be largely free to exercise its considered judgment on questions of whether to proceed by means of prosecution, injunction, varying forms of persuasion, or other types of action. Because of the inherent limitations upon the judicial power, the plaintiffs' various requests for mandamus must be denied.[1]

It should be noted in passing that this result is set in the context of a

1. This result holds, as well, for the restatement of plaintiffs' demand as contained in its memorandum in opposition to defendants' motion to dismiss: "That the Defendants be required to take all necessary steps to insure that their agents, and in particular, federal marshals and agents of the Federal Bureau of Investigation, are present when they are notified or have reason to believe that the constitutional rights of the plaintiffs and/or members of their class are about to be subverted by Mississippi law enforcement officers or others, particularly when members of plaintiffs' class are attempting to register to vote in federal elections; to the end that all Mississippi law enforcement officers and others who attempt to prevent members of Plaintiffs' class from registering to vote or from exercising their other constitutional rights will be promptly arrested and prosecuted in the appropriate federal courts, and, most importantly, to be prevented *at that point* with whatever force is necessary from stopping members of plaintiffs' class from registering to vote or from exercising their other constitutional rights[.]"

complaint which fails to name any particular individual against whom a prosecution or arrest should be instituted,[2] and which does not allege that the defendants have arbitrarily, capriciously, or willfully abused their discretion.[3] Cf. Goodell v. Woodbury, 71 N.H. 378, 52 A. 855 (1902).

Second, plaintiffs seek a declaratory judgment "declaring that Plaintiffs and members of Plaintiffs' class are entitled to the protection by United States Marshals and agents of the Federal Bureau of Investigation of their constitutional rights" and declaring that the U. S. marshals and F. B. I. agents "are authorized and required by Federal law to protect and to prevent the deprivation of the constitutional rights of Plaintiffs and members of Plaintiffs' class in all cases similar to those enumerated in this complaint." (para. 25(C), as amended.)

■ To support an action under the Declaratory Judgment Act, of course, there must be an "actual controversy." 28 U.S.C. § 2201. Plaintiffs allege, in the most general fashion, as follows:

"There exists a real and actual controversy between Plaintiffs and Defendants as to the existence (A) of Defendant's authority and (B) of Defendants' duties under Federal law as relates to the use of United States Marshals, agents of the Federal Bureau of Investigation, or whatever force is required to prevent the deprivations of the constitutional rights of the plaintiffs and members of plaintiffs' class." (para. 24A.)

The only factual allegations even remotely relevant to such general conclusion is that one official of the Civil Rights Division of the United States Department of Justice told one of the plaintiffs, when the plaintiff contacted him after escaping from "a white lynch mob," that "the Justice Department could not act until someone was hurt and therefore denied [plaintiff's] request for help." (para. 16.) The other statements all concern simple refusals on the part of Federal officials either to investigate, or—in one case where they did investigate—to prosecute, or both. Thus there is no allegation of an "actual controversy" over the extent of the defendants' authority, except for one isolated instance which is more reasonably construed as a discretionary decision by the Justice Department than as a purported claim of a lack of statutory authority to act. In any event, even if otherwise construed, this isolated instance is not a controversy "actual" enough to bring it within either 28 U.S. C. § 2201 or the "case and controversy" provision of Article III of the Constitution. If the Court were to "declare" any "rights and other legal relations" in this case, § 2201, it would be rendering an advisory opinion which is beyond its power to do.

The motion of defendants to dismiss the complaint will therefore be granted on the ground that the complaint has not stated a cause of action on which relief can be granted.

2. The complaint refers to the individuals variously as: "white law enforcement officers and private citizens of the state of Mississippi" (para. 14); "a group of citizens which included county officials" in Liberty, Miss. (para. 15); "local law enforcement officers" in Indianola, Greenwood, Clarksdale, Rulesville, Pike County, and "the Delta region" (paras. 15, 16, 17, 18, 20, 21); "city policemen" in Jackson (para. 17); "the guards" at a specified penal farm (para. 19); "the city and county police" in Clarksdale (para. 23). In addition, the "voter registrar" in Clarksdale (para. 17), and the mayor of Rulesville (para. 18) are mentioned as participating.

3. The only allegations directly claiming anything more than a failure on the part of Federal officials to act after plaintiffs informed them of some violation, concern an allegation that U. S. marshals, agents of the F. B. I. and U. S. Attorneys were "in" the Federal Building when one of the plaintiffs was arrested and dragged off the steps of said building and said U. S. officials "made no effort to prevent his arrest." (para. 17.)